IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:08-CT-3118-FL

| | | |
|---|---|---|
| JAMES T. ELLERBE, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | ORDER |
| CAPTAIN ROACH, et al., | ) ) | |
| Defendants. | ) ) | |

This matter is before the court on the motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (DE # 25) of defendants Michael Roach, Kenneth Addington, Adrian Lewis, Wayne Hicks, and Bryan Powell. The matter also is before the court on plaintiff's failure to obtain service on defendant Officer Foxx. The issues raised are ripe for adjudication. For the following reasons, the court denies defendants' motion for summary judgment, and dismisses defendant Foxx from this action without prejudice.

## STATEMENT OF THE CASE

On September 4, 2008, plaintiff James T. Ellerbe, through counsel North Carolina Prisoner Legal Services, filed this action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendants deprived him of his Eighth Amendment right to be free from cruel and unusual punishment when they used unnecessary and excessive force against him. Defendants moved for summary judgment on May 7, 2010, arguing that the evidence in the record demonstrates that they did not use excessive force against plaintiff. Plaintiff responded to defendants' motion on June 14, 2010.

## STATEMENT OF THE FACTS

The facts in the light most favorable to plaintiff are as follows.[1] On May 31, 2007, plaintiff was confined in the D-Block at Polk Correctional Institution ("Polk"). (Compl. ¶ 4; Ellerbe Aff. ¶ 3.) On that day, there was a group disturbance in the D-Block involving members of the "Bloods" gang. (Ellerbe Aff. ¶ 4; Addington Aff. ¶ 7; Lewis Aff. ¶ 5.) Plaintiff is a member of the Bloods, but denies participating in the disturbance (Ellerbe Aff. ¶ 5). Plaintiff contends that he did nothing to provoke any confrontation with defendants, and that he was targeted by defendants simply because he is associated with the Bloods and lives in the D-Block.[2] (Id. ¶¶ 5-8.)

At approximately 12:45 p.m., defendant Addington made the decision to assemble an anticipated-use-of-force ("AUOF") team. (Addington Aff. ¶ 7.) Defendant Lewis was the Team Supervisor for the AUOF team. (Lewis Aff. ¶ 5.) The AUOF team consisted of a sergeant, five officers (a shield officer, two officers assigned to the upper torso, and two officers assigned to the lower torso), and a camera operator. (Addington Aff. ¶ 8 & Ex. D.) Defendants Lewis, Hicks, Powell, and Foxx were members of the AUOF team. Defendants Roach and Addington observed the AUOF term, but were not participants. (Roach Aff. ¶ 8; Addington Aff. ¶ 13.)

After the team was assembled, defendants proceeded to plaintiff's cell, at which point defendant Lewis observed that plaintiff's hands and head were wrapped in cloth.[3] (Lewis Aff. ¶ 7.)

---

[1] See Scott v. Harris, 550 U.S. 372, 378 (2007) (noting that a court ruling on a motion for summary judgment is required to view the facts and draw all reasonable inferences in favor of the non-moving party).

[2] Defendants contend that plaintiff participated in the Bloods' group disturbance and that he was kicking and banging on his door. (Roach Aff. ¶ 3; Lewis Aff. ¶ 5; Addington Aff. ¶ 7.) According to defendants, plaintiff was directed to stop but refused to do so. (Lewis Aff. ¶ 5.)

[3] Defendant Lewis further states that plaintiff was standing on his bunk (Lewis Aff. ¶ 7), which plaintiff denies. Plaintiff admits that he had wrapped his hands with strips of torn t-shirt material, ostensibly to protect his hands and wrists from the restraints. (Ellerbe Aff. ¶ 11.)

2

The officers then ordered plaintiff to place his hands out of the food passage door so that restraints could be applied. (Id.) Plaintiff states that he initially complied with this order, but that defendants did not apply restraints to his hands, so he removed them. (Ellerbe Aff. ¶ 12.) Plaintiff concedes that he refused a second order to place his hands through the food passage door. (Defs.' Ex. 2.) Defendant Lewis then directed the control booth officer to unlock plaintiff's cell door, and the AUOF team entered the cell while defendant Lewis observed from the outside. (Lewis Aff. ¶ 8.)

According to plaintiff, he immediately dropped face down to the floor because he was "terrified." (Ellerbe Aff. ¶ 13.) Defendants proceeded to punch, kick, grab, and crush plaintiff against the floor of his cell. (Id. ¶ 15.) Defendants also stabbed him in the face with an unknown object and spat on him. (Id. ¶ 19.) Plaintiff was then dragged out of his cell, and defendants formed a box around him and pushed his head into the wall and further restrained him. (Id. ¶ 21.) Plaintiff was then sprayed with the entire contents of a can of pepper spray, after which defendants struck him in the head with the empty canister.[4] (Id. ¶ 22.) As a result of the assault, plaintiff's face was

---

[4] Defendants present a different version of the facts with respect to the events that occurred when they entered plaintiff's cell. Defendants assert that plaintiff charged them when they entered his cell, and that they pinned plaintiff to the wall and forced him to the ground. (Powell Aff. ¶ 9.) Defendants state that plaintiff was given several orders to stop resisting, but that he continued to resist. (Id.) Defendants further state that, during the struggle with plaintiff, they were able to get control of his right arm by using pain compliance techniques, and that they were able to unwrap his wrist to apply restraints. (Id.) Defendants contend that plaintiff continued to struggle and kick throughout this process. (Id.) Defendants admit that they sprayed plaintiff with pepper spray, and that plaintiff stopped resisting. (Id.) Defendants assert that plaintiff was given the opportunity to decontaminate, but refused. (Lewis Aff. ¶ 10.)

Pursuant to standard operating procedures at Polk regarding the use of force on inmates, a camera operator created a "visual and audio documentation of . . . [the] incident[] for . . . possible judicial litigation." (Addington Aff. Ex. D at p. 4.) A copy of the video has been provided (see Lewis Aff. Ex. A), and the court has reviewed it. Although a court should "view[] the facts in the light depicted by the videotape" where those facts contradict the non-moving party's narrative, see Scott, 550 U.S. at 380-81, here the video neither confirms nor refutes plaintiff's version of events. For most of the video, defendant Lewis is standing between the camera operator and plaintiff's cell, such that the most that is ever seen of plaintiff is his legs as he's pinned down by defendants. From what little is visible, it is not readily apparent that plaintiff charged defendants or that he resisted the officers. Defendants can be heard yelling at plaintiff to "stop resisting" and to let go of their legs, but plaintiff can also be heard yelling back that he is "not resisting" and that he can't breathe. The video also does not show plaintiff standing on his bunk or making any noise prior to the entry.

swollen and his eyes were damaged. (Id. ¶ 23.) Plaintiff also suffered a laceration on his upper right eyelid, subconjunctival hemorrhage, left lateral eye conjunctiva, a knot on the back of his head, and additional bumps, bruises, and cuts. (Id. ¶¶ 24-26; see also Stover Aff. Ex. B.)

## DISCUSSION

A.  Failure to Obtain Service of Process

Plaintiff has failed to timely obtain service of the summons and complaint on defendant Foxx. Rule 4 establishes the requirements for service of the summons and complaint, providing that, absent a showing of good cause, a complaint may be dismissed if a plaintiff fails to obtain service of process within one hundred twenty (120) days. Fed. R. Civ. P. 4(m); see Mendez v. Elliot, 45 F.3d 75, 78-79 (4th Cir. 1995). On September 24, 2009, after the period contemplated by Rule 4 had already passed, this court allowed plaintiff an additional sixty (60) days from date of that order to effect service on defendant Foxx. Plaintiff was informed that failure to accomplish service within sixty (60) days could lead to dismissal of any claim against defendant Foxx. The sixty-day time period has since expired without service on defendant Foxx, and plaintiff's claim against that defendant is accordingly dismissed without prejudice.

B.  Summary Judgment

1.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the

4

nonmoving party must then affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

In their motion for summary judgment, defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. The court looks both to whether a constitutional right would be violated on the facts alleged and to whether such right was clearly established at the time of the violation. Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003). The court may begin its analysis with either of these two inquiries. See Pearson v. Callahan, 555 U.S. ___, ___, 129 S.Ct. 808, 818 (2009).

2.  Analysis

The Eighth Amendment prohibits cruel and unusual punishment, including the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312 (1986). The "core judicial inquiry" in an excessive force claim by a prisoner is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, __ U.S. __, 130 S.Ct. 1175, 1178 (2010) (per curiam) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). Although a prisoner need not show that any injury sustained is more than *de minimis*, "[t]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could

5

plausibly have been thought necessary in a particular situation." Id. (internal quotation marks omitted). In determining whether the use of force is wanton or unnecessary, the court may also consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Hudson, 503 U.S. at 7 (internal quotation marks omitted).

According to plaintiff's version of events, the justification for the force used against plaintiff was a group disturbance in which plaintiff did not participate. Prior to defendants' use of force, plaintiff refused to cooperate by placing his hands through a food passage door in his cell so that he could be restrained. However, there is no undisputed evidence that plaintiff repeatedly kicked his door to make noise, charged at defendants as they entered his cell, or resisted their efforts to restrain him. Instead, plaintiff states that he quickly fell to the floor and submitted, but that defendants continued to punch, kick, grab, crush, and gouge him. Moreover, plaintiff alleges that defendants emptied an entire can of pepper spray in his eyes. Although plaintiff's injuries, including substantial swelling near plaintiff's eyes and cuts on his face, are relatively minor, the injuries are consistent with plaintiff's allegations.

Based on the undisputed evidence before the court, and accepting plaintiff's narrative where the facts are genuinely in dispute, defendants are not entitled to qualified immunity. With the materials that have been provided to the court, a jury could reasonably find that defendants violated plaintiff's Eighth Amendment rights by acting maliciously and sadistically to cause harm to plaintiff after he submitted to force and after he was handcuffed and restrained. Where the video submitted by defendants in ambiguous and does not contradict plaintiff's narrative, the ultimate ability of

plausibly have been thought necessary in a particular situation." Id. (internal quotation marks omitted). In determining whether the use of force is wanton or unnecessary, the court may also consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Hudson, 503 U.S. at 7 (internal quotation marks omitted).

According to plaintiff's version of events, the justification for the force used against plaintiff was a group disturbance in which plaintiff did not participate. Prior to defendants' use of force, plaintiff refused to cooperate by placing his hands through a food passage door in his cell so that he could be restrained. However, there is no undisputed evidence that plaintiff repeatedly kicked his door to make noise, charged at defendants as they entered his cell, or resisted their efforts to restrain him. Instead, plaintiff states that he quickly fell to the floor and submitted, but that defendants continued to punch, kick, grab, crush, and gouge him. Moreover, plaintiff alleges that defendants emptied an entire can of pepper spray in his eyes. Although plaintiff's injuries, including substantial swelling near plaintiff's eyes and cuts on his face, are relatively minor, the injuries are consistent with plaintiff's allegations.

Based on the undisputed evidence before the court, and accepting plaintiff's narrative where the facts are genuinely in dispute, defendants are not entitled to qualified immunity. With the materials that have been provided to the court, a jury could reasonably find that defendants violated plaintiff's Eighth Amendment rights by acting maliciously and sadistically to cause harm to plaintiff after he submitted to force and after he was handcuffed and restrained. Where the events depicted in the video submitted by defendants are ambiguous and do not plainly contradict plaintiff's

7

narrative, the ultimate ability of plaintiff to prove his claim to the jury in large part depends on credibility determinations that this court may not make at the summary judgment stage. See Anderson, 477 U.S. at 255 ("Credibility determinations . . . are jury functions, not those of a judge . . . ruling on a motion for summary judgment."); cf. Smith v. Ozmint, 578 F.3d 246, 254 (4th Cir. 2009) (noting that court may not make credibility determination, but may adopt a version of the facts contradicting the non-moving party where "blatantly contradicted by the record"). Moreover, a reasonable officer would have known that such conduct, if true, violates clearly established constitutional principles.

Because there is a genuine issue of material fact with regard to the question of whether defendants violated plaintiff's Eighth Amendment rights, defendants are not entitled to qualified immunity, and their motion for summary judgment is DENIED.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (DE # 25) is DENIED. Defendant Foxx is DISMISSED from this action without prejudice pursuant to Rule 4(m).

SO ORDERED, this the 23rd day of August, 2010.

LOUISE W. FLANAGAN
Chief United States District Judge

8

Case 5:08-ct-03118-FL Document 32 Filed 08/24/10 Page 8 of 8